### In re MINTER ELECTRIC COMPANY, INC., Relator.

### No. 05–08–01475–CV.

Court of Appeals of Texas, Dallas.

Feb. 2, 2009.

---

Bryan Powell Reese, Wes Black, Fee, Smith, Sharp & Vitullo, L.L.P., Dallas, TX, for Relator.

Douglas T. Floyd, Plano, TX, for Real Party In Interest.

Before Justices FITZGERALD, LANG–MIERS, and WHITTINGTON.[1]

## OPINION

Opinion by Justice LANG–MIERS.

Relator contends that the trial court erred by granting real party's motion to set aside the court's previous orders after the trial court's plenary jurisdiction had expired. We conclude that relator has not shown that it is entitled to the relief requested and deny relator's petition for writ of mandamus.

Plaintiffs below, Cindy Berry, Megan Taylor, and the Estate of Irvin Matthew Taylor, filed their original petition on December 6, 2006 naming Jesus Guevara, the Texas Health and Human Services Commission, and Minter Electric Company, Inc. as defendants. Plaintiffs claimed that Irvin Matthew Taylor was killed as a result of being struck by a vehicle driven by Jesus Guevara when Guevara was acting within the scope of his employment with Minter. Plaintiffs paid for citation to issue

---

1. The Honorable Mark Whittington, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

and it was issued for all three defendants. Only Minter was actually served with process.[2] Approximately one month later, Minter filed a motion to dismiss for lack of jurisdiction, contending that the Estate of Irvin Matthew Taylor was not a legal entity and lacked the capacity to bring the claims and that the proper plaintiff would be the personal representative or administrator of the estate of the decedent. Plaintiffs did not respond to that motion. The court granted the motion and dismissed the Estate of Irvin Matthew Taylor from the case on April 18, 2007. Plaintiffs filed a motion for reconsideration one month later, but the court did not rule on the motion.

On September 6, 2007, Minter filed a no evidence motion for summary judgment regarding all of the remaining plaintiffs' claims. Plaintiffs did not file a response and did not appear at the hearing. The court granted the motion by an order dated October 24, 2007 entitled "Final Judgment" with the word "Final" struck through. Six days later, plaintiffs filed a response to the no evidence motion for summary judgment. About a month later, plaintiffs also filed a motion for new trial, asserting that they did not file a timely response to the no evidence motion for summary judgment because plaintiffs' counsel had calendared the wrong dates for the response due date and the hearing. The court did not rule on the motion.

On June 4, 2008, plaintiffs filed a motion to set aside the no evidence summary judgment and the dismissal of the Estate. Plaintiffs stated that their previous counsel had been disbarred, but that he did not disclose that fact to them, and that he failed to respond to the opposing party's motions or discovery. They also argued that the no evidence motion for summary judgment should have been denied. Minter responded, contending that the judgment granting the no evidence motion for summary judgment had become final and that the trial court did not have jurisdiction to reconsider its previous rulings.

The trial court signed an order setting aside the dismissal of the Estate and the no evidence summary judgment on October 13, 2008. In the order the court stated, "After considering the evidence and argument of counsel, this Court is of the opinion that the Court retains jurisdiction of this cause and that the above mentioned orders should be set aside and this cause set for trial on the merits." Relator contends that the trial court erroneously determined that it retained plenary power to set aside its previous orders.

Mandamus is an extraordinary remedy and will issue only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Sheppard*, 193 S.W.3d 181, 185 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding) (citing *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex.2005)). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). A relator who seeks mandamus relief must demonstrate a "clear right" to the action it seeks. *See Tilton v. Marshall*, 925 S.W.2d 672, 682–83 (Tex.1996). Mandamus is proper if a trial court issues an order after its plenary power has expired because such an order is void. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex.2000).

**2.** Service on the Texas Health and Human Services Commission is not an issue in this proceeding.

In *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191 (Tex.2001), the Texas Supreme Court considered the problem of determining when a judgment rendered without a conventional trial is final. It held that there is no presumption of finality for an order granting summary judgment. *Id.* at 205–06; *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex.2007). Instead, it concluded that an order granting summary judgment is not final "unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Lehmann*, 39 S.W.3d at 205. If the order is written in clear and unequivocal language, we must give it effect "despite any other indications that one or more parties did not intend for the judgment to be final." *Id.* at 206.

■ In this case, the issue is whether a judgment granting a no evidence motion for summary judgment in favor of one of two defendants is a final judgment if the other defendant has not been served with citation at the time the judgment is signed. The parties agree that our analysis is governed by *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230 (Tex.1962), and *M.O. Dental Lab v. Rape*, 139 S.W.3d 671 (Tex.2004).

In *Youngstown*, the trial court signed a judgment granting summary judgment for all but one of the defendants. That defendant, Cannan, had not been served with citation and had not answered. On appeal, the Texas Supreme Court held that the judgment was a final judgment, even though it did not specifically dispose of the claims against Cannan, because there was nothing in the record to indicate that the petitioner ever expected to obtain service on Cannan. The court held that under those circumstances, "the case stands as if there had been a discontinuance as to Cannan, and the judgment is to be regarded as

final for the purposes of appeal." *Youngstown*, 363 S.W.2d at 232. The court did not state whether the parties disputed the finality of the judgment or whether it raised the issue *sua sponte*. *See id.*

In *M.O. Dental*, the court *sua sponte* raised the issue of finality of the trial court's judgment, denoted "Order Granting Summary Judgment." Relying on *Lehmann*, the court reaffirmed that " 'if the record reveals the existence of parties ... not mentioned in the order, the order is not final,' unless it is made final by its own language." *M.O. Dental*, 139 S.W.3d at 674 (quoting *Lehmann*, 39 S.W.3d at 206). The court concluded in *M.O. Dental* that the judgment was correctly considered final because the record affirmatively showed that the plaintiff never intended to serve the remaining defendant: the plaintiff's pleadings expressly stated that the defendant's "location for service ... is unknown at this time, so no citation is requested." *M.O. Dental*, 139 S.W.3d at 674. Additionally, the plaintiff was the party contending that the judgment was final.

Unlike this case, both *Youngstown* and *M.O. Dental* were direct appeals from summary judgments. And neither case establishes what a reviewing court should consider as sufficient indication that the plaintiff expects to serve the unserved defendant. Nor do those cases establish at what point in the trial proceeding such a determination should be made, or what demonstrates an abuse of discretion when the trial court determines the judgment was not final.

Applying the reasoning of *Youngstown* and *M.O. Dental*, to find an abuse of discretion in this case, we would have to conclude that there is *nothing* in the record to support the trial court's decision that the no evidence summary judgment was not final. In other words, we would have to conclude that there is nothing in

the record to indicate to the trial court that real parties ever expected to obtain service on Guevara. But the petition recited where Guevara could be served, and the citation was paid for and issued for him at the same time citation was issued for Minter. In addition, the record shows that the litigation in this personal injury case had proceeded for only four months when the trial court dismissed the Estate from the lawsuit, and for only ten months when the trial court granted the no evidence summary judgment in favor of Minter. *See In re Sheppard*, 193 S.W.3d at 187. Although the stage of the trial proceeding is not determinative, we may consider it as part of the mandamus record for evidence that demonstrates whether or not the plaintiff intended to serve the unserved defendant.[3] *See id.* at 187–88. Plaintiffs continued to include Guevara in the pleadings they filed after the no evidence summary judgment was granted in favor of Minter. Further, the judgment granting the no evidence motion for summary judgment shows that the word "Final" in the heading "Final Judgment" was struck through. Finally, the trial court's order setting aside the dismissal of the Estate and no evidence summary judgment states that the court heard evidence in ruling on the motion to set aside, but the mandamus record does not contain that evidence and the parties do not argue what that evidence showed. Without a record of the evidence presented at the hearing, we must presume that the evidence supports the trial court's ruling. *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 313–14 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding).

---

3. For example, plaintiffs pleaded that discovery should be conducted under rule 190.4, or Level 3. *See* Tex.R. Civ. P. 190.4. Under rule 190.4, discovery is conducted in accordance with a control plan tailored to the circumstances of the specific suit. *Id.* However, the discovery control plan applicable to this case

We conclude that relator has not demonstrated that the trial court clearly abused its discretion by setting aside the dismissal of the Estate and no evidence summary judgment and that it has no adequate remedy at law because the mandamus record does not clearly indicate that the trial court had lost its plenary power when it signed the order. *See Lehmann*, 39 S.W.3d at 205. As a result, relator has not demonstrated a clear right to the relief it seeks.

We **DENY** relator's request for mandamus relief.

FITZGERALD, J. dissenting.

### DISSENTING OPINION

Dissenting Opinion by Justice FITZGERALD.

The majority concludes relator Minter Electric Company, Inc. has not shown its entitlement to mandamus relief. I respectfully disagree and would grant the petition. Accordingly, I dissent.

As the majority states, the lawsuit below involves a vehicle collision that occurred on December 13, 2004. The petition alleges Jesus Guevara was driving a pick-up truck belonging to his employer, Minter, when he ran into the back of the vehicle being driven by plaintiffs' decedent, Irvin Matthew Taylor. Because I believe the time line is critical to analyzing this case, I set it forth herein:

- 12.12.2006    Cindy Berry, Megan Taylor, and Estate of Irvin Matthew Taylor (the "Estate") file Original Petition naming defendants Jesus Guevara, Texas Health and Human Services Commission, and Minter

---

is not part of the mandamus record. And the mandamus record does not indicate that the time for discovery was complete when the trial court dismissed the claims against Minter. *See In re Sheppard*, 193 S.W.3d at 187–88 & n. 6.

|   | Citation issued for all named defendants |
| --- | --- |
| • [unclear] | Minter served with citation |
| • 01.08.2007 | Minter answers |
| • 01.18.2007 | Minter files Motion to Dismiss [Estate] for Lack of Jurisdiction |
| • 04.18.2007 | Trial court grants Motion to Dismiss |
| • 09.06.2007 | Minter files no-evidence Motion for Summary Judgment on remaining plaintiffs' claims |
| • 10.24.2007 | Trial court grants Motion for Summary Judgment |
| • 11.23.2007 | Berry files Motion for New Trial |
| • 01.07.2008 | Motion for New Trial overruled by operation of law |
| • 06.04.2008 | Three original plaintiffs file Plaintiffs' Motion to Set Aside Dismissal for Lack of Jurisdiction and to Set Aside No-Evidence Summary Judgment |
| • 10.13.2008 | Trial court signs Order Setting Aside Dismissal For Lack of Jurisdiction and No-Evidence Summary Judgment |

The suit proceeded in the trial court with Minter the only defendant appearing. It is undisputed that Guevara was not served with process as of the time the Motion for New Trial was overruled or as of thirty days later.

In this original proceeding, Minter challenges the trial court's October 13, 2008 Order Setting Aside Dismissal For Lack of Jurisdiction and No–Evidence Summary Judgment (the "Order"). Minter claims the trial court's plenary power expired on February 6, 2008, thirty days after the Motion for New Trial was overruled by operation of law. Thus, Minter argues, the Order-signed some eight months after the trial court's plenary power expired-was void.

Mandamus will always lie to correct a void order, i.e., an order the trial court had no power or jurisdiction to render. *Urbish v. 127th Judicial Dist. Court,* 708 S.W.2d 429, 431 (Tex.1986) (orig.proceeding). Indeed, if an order is void, the relator need not even show he lacks an adequate appellate remedy, and mandamus

relief is appropriate. *In re Sw. Bell Tel. Co.,* 35 S.W.3d 602, 605 (Tex.2000) (orig.proceeding). In this case, our decision turns on whether the no-evidence summary judgment granted Minter was final. If it was final, then thirty days after real parties' motion for new trial was overruled by operation of law, the trial court lost its plenary power in this suit. *See* TEX.R. CIV. P. 329b(e). Any order the trial court entered after that date, regardless of the reasoning behind it, would have been void. *See Sw. Bell,* 35 S.W.3d at 605.

I agree with the majority and the parties that this case is governed by the Texas Supreme Court's rulings in *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230 (Tex.1962) and *M.O. Dental Lab v. Rape,* 139 S.W.3d 671 (Tex.2004). In *Youngstown,* plaintiff Youngstown sued six individuals alleged to be partners in Texita Oil Company. Two of the defendant-partners had been discharged in bankruptcy. Three defendant-partners were granted summary judgment by the trial court. The sixth defendant-partner "was never served with citation and did not answer, and there is nothing to indicate that [Youngstown] ever expected to obtain service upon him." 363 S.W.2d at 232. The supreme court concluded, "in these circumstances the case stands as if there had been a discontinuance as to [the final, unserved defendant], and the judgment is to be regarded as final for the purposes of appeal." *Id.*

This rule was reaffirmed in *M.O. Dental Lab,* and it has been consistently followed to determine finality of one defendant's summary judgment when another defendant remains unserved at the time of judgment. In *Youngstown* and *M.O. Dental,* and in the majority of cases following them, the issue of finality arises when an appellate court must determine its jurisdiction and asks whether the trial court's

judgment is final and appealable. *See, e.g., First Dallas Petroleum, Inc. v. Hawkins,* 715 S.W.2d 168 (Tex.App.-Dallas 1986, no writ); *see also Knie v. Piskun,* 23 S.W.3d 455 (Tex.App.-Amarillo 2000, pet. denied); *Gumpp v. Phila. Life Ins. Co.,* 562 S.W.2d 885 (Tex.Civ.App.-San Antonio 1978, no writ). However, the issue has also arisen at least twice in mandamus proceedings similar to this one, requiring the appellate court to determine whether the trial court's judgment was final such that a later order setting that judgment aside would be void. *See In re Miranda,* 142 S.W.3d 354 (Tex.App.-El Paso 2004, orig. proceeding); *see also In re Sheppard,* 193 S.W.3d 181 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding).[1] In both of those cases, the courts acknowledged the *Youngstown* rule. *Miranda* applied the rule in the case of a summary judgment and concluded the trial court's later order was void; *Sheppard* applied the rule in the case of a medical-malpractice dismissal and concluded the later order was not void.

The *Youngstown* opinion concluded a summary judgment resolving the case for all served defendants was final if: (1) the remaining defendant was never served with citation, (2) the remaining defendant did not answer, and (3) nothing in the record indicated the plaintiff ever expected to obtain service upon the remaining defendant. *See* 363 S.W.2d at 232. In the case before us, the parties agree named-defendant Guevara was not served with process before Minter's summary judgment was granted, and Guevara had not answered or appeared at that time. Thus, the only possible barrier to finality in this case is the third prong of the *Youngstown* test: whether anything in our record indicated real parties expected to obtain service upon Guevara at the time of the summary judgment or thereafter.

I agree with the majority that neither *Youngstown* nor *M.O. Dental* addresses what evidence would show the necessary expectation of service. But *M.O. Dental* is helpful because it applies the *Youngstown* test to the facts of its case and concludes the summary judgment in that case meets all three prongs. The opinion asserts first that the remaining defendant, Charlie Smith, was never served and that the record contained no pleadings or motions filed by Smith. 139 S.W.3d at 674. The *M.O. Dental* court then addressed the third prong of the *Youngstown* test, stating:

> In the instant case an examination of the record affirmatively reveals that the order granting summary judgment was final. [The plaintiff], in her original petition, stated "[t]he location for service of Defendant Charlie Smith is unknown at this time, so no citation is requested." After the trial court granted summary judgment, [plaintiff] appealed, but did not indicate in either the trial court or the court of appeals that she expected to serve Smith and, therefore, that the summary judgment was not final. Additionally, both [plaintiff] and M.O. Dental Lab agreed in their briefs to the court of appeals that Smith was never served with process in this case. Thus, as we said in *Lehmann,* the record "illumin[ates] whether an order ... that all parties appear to have treated as final may be final despite some vagueness in the order itself."

*Id.* at 674–75. The facts of the case before us are more similar to *M.O. Dental* than they are different. In our case, as in *M.O. Dental,* real parties did not indicate in any pleadings in the trial court that they intended to serve Guevara or to explain why

---

1. *Miranda* has a companion case decided on the same basis. *See In re Nasir,* 142 S.W.3d 357 (Tex.App.-El Paso 2004, orig. proceeding).

they had not done so. Neither Plaintiffs' Motion for New Trial nor Plaintiffs' Motion to Set Aside Dismissal for Lack of Jurisdiction and to Set Aside No–Evidence Summary Judgment indicates real parties were treating Minter's summary judgment as interlocutory. On the contrary, those documents certainly appear to assume the summary judgment was final.

The majority describes the substance of the Motion for New Trial (a calendaring error by counsel for plaintiffs) and the Motion to Set Aside Dismissal For Lack of Jurisdiction and to Set Aside No–Evidence Summary Judgment (failings of their purportedly disbarred counsel and reasons why the summary judgment motion should have been denied). The trial judge refused to grant a new trial when he could have done so. The issues put before him months later as reasons to set aside his earlier rulings appear to be issues involving plaintiffs' relationship with their attorney, not Minter. The majority also notes the plaintiffs continued to include Guevara in the pleadings they filed after the summary judgment. The only such pleadings in our record are these efforts to overturn the rulings in favor of Minter. There is certainly no indication the plaintiffs treated Guevara as a party in any way other than including his name in the caption. No court has concluded that naming a defendant in a caption is an indication the plaintiffs expected to serve him.

In this case, as in *M.O. Dental*, the real parties filed a response in this Court that does not explain either that they expected to obtain service on Guevara at the time of the summary judgment or why they had not done so in a timely fashion. Finally, as in *M.O. Dental*, the parties acknowledge Guevara was not served with process at the time the summary judgment was entered or would have become final. The court in *M.O. Dental* concluded the sum-

mary judgment before it was final. I conclude that our case fits well within both the analysis and conclusion of *M.O. Dental*.

The majority distinguishes *M.O. Dental* on the basis of issuance of citation. It is true that real parties in our case paid for and had citation issued for Guevara at the same time they did so for Minter. However, that citation was not served when the trial court granted summary judgment, or when it allowed the motion for new trial to be overruled by operation of law, or even thirty days later. Unlike the majority, I view these circumstances as persuasive under *Youngstown* that there was no expectation Guevara would ever be served. In *M.O. Dental*, the record indicated the plaintiff did not know where to serve the remaining defendant; one can presume that if that plaintiff were to learn where to do so, service would have been forthcoming. But in our case, the plaintiffs knew exactly where to serve Guevara and had citation issued. What reason could there have been for *not* serving him other than an express intent not to do so? The record contains neither evidence nor argument concerning some barrier to serving Guevara. The plaintiffs simply chose not to serve him, even in the face of a summary judgment motion and the denial of their motion for new trial.

I have located only one case applying *Youngstown* in which the opinion mentions that citation was issued but not served. *See Zepeda v. Bulleri*, 739 S.W.2d 496 (Tex.App.-San Antonio 1987), *overruled on other grounds by Dillard v. Leonard*, 801 S.W.2d 23 (Tex.App.-San Antonio 1990). The *Zepeda* court stated:

Appellees admit that of the six defendants, only appellant has been served. Although citations have been issued for the other named defendants, no service has been executed. When a judgment

disposes of all named parties except those who have not been served and have filed no answer, the judgment is final for the purpose of appeal, and the case stands as if there had been a discontinuance or a dismissal as to the parties not served.

739 S.W.2d at 496 (citing *Youngstown, First Dallas Petroleum,* and *Gumpp* ).[2] The *Zepeda* court clearly did not consider the mere issuance of service to be a sufficient indication the plaintiff actually expected to obtain service on the remaining defendants. *See Youngstown,* 363 S.W.2d at 232. Given the cases' emphasis on actual service of process (with its resulting notice to the named defendant), I would not conclude that the mere issuance of citation indicates an intention by a plaintiff to serve that defendant within the meaning of *Youngstown.*[3]

The majority points out that the judge struck through the word "Final" before signing the summary judgment, indicating he did not believe the judgment was final. The summary judgment was signed (and, apparently, altered) by a retired judge, not the presiding judge of the trial court. However, regardless of who granted the summary judgment in this case, its finality was determined by operation of law, not by the judge's intention or his alteration of the order. *See Lehmann v. HarCon Corp.,* 39 S.W.3d 191, 200 (Tex.2001) ("The language of an order or judgment cannot make it interlocutory when, in fact, on the record, it is a final disposition of the case."). For this reason, I disagree with the majority's premise that our review is

based on whether the trial court abused its discretion by concluding the judgment was not final. If the summary judgment in this case met the *Youngstown* standard, then it was final regardless of what the trial judge believed.

Real parties argue their case fits within the analysis of *In re Sheppard.* However, *Sheppard* itself stresses that the "context" of its case, which was the dismissal of medical malpractice claims for failure to serve an expert report, is wholly different from that of *Youngstown* and *M.O. Dental:*

> For example, if the stage of litigation is comparable to the [*Youngstown* ] and *M.O. Dental Lab* cases-summary judgments entered for all other defendants in the case at the culmination of the lawsuit-a plaintiff's failure to serve a defendant, absent evidence to the contrary, can only mean that the plaintiff does not intend to serve the defendant and has discontinued the case against that defendant.

*Sheppard,* 193 S.W.3d at 188. Our case, of course, has the same summary judgment posture as *Youngstown* and *M.O. Dental.* According to *Sheppard,* thus, "absent evidence to the contrary" the failure to serve Guevara at the culmination of the lawsuit "can only mean" real parties had discontinued the suit against him. *See id.* There is no such contrary evidence in the record before us. The majority cites *In re Sheppard* with approval in an effort to question the propriety of the noevidence summary judgment, suggesting it was granted too early in the case to allow for finality. But the majority's concerns are based on noth-

---

2. *Zepeda* was overruled because the judgment in that case was taken on the basis of a default by the served defendant. *Dillard* distinguished *Youngstown* and its progeny, which were summary judgment cases rather than default judgment cases. 801 S.W.2d at 24.

3. Moreover, as a general rule a plaintiff must exercise due diligence in procuring service. *See Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 830 (Tex.1990). When a plaintiff makes absolutely no effort to serve a named defendant for more than a year and a half, she has certainly not met that obligation.

ing more than speculation. The record does not contain a violated scheduling order or an objection to the no-evidence motion on any ground. Certainly nothing in the record indicates the summary judgment proceeding somehow cut off efforts to serve Guevara: there is absolutely no evidence of such efforts. To the extent *In re Sheppard* has any bearing on Minter's case, it illustrates why Minter's judgment became final.

Real parties argue finally that Minter's failure to seek a severance after the summary judgment was granted indicates it did not believe its judgment was final. I disagree. Minter had every right to rely on well-settled law that made its judgment final when the remaining defendant had not been served with process. Indeed, real parties' argument here is the opposite of the correct legal argument: the only reason for Minter to seek a severance would be a belief that its judgment was *not* final. The record before us offers no reason why Minter should reasonably have come to that conclusion. *Youngstown* and its progeny allow the defendant in Minter's position to be released from litigation, not to be left hanging for an undetermined time, after which a plaintiff might haul the defendant back into court for reasons not related to the defendant's conduct in any way.

In summary, the trial court granted summary judgment for Minter on October 24, 2007. Guevara had not been served at that time and had not appeared. Real parties filed a motion for new trial that did not address Guevara; the motion was overruled by operation of law on January 7, 2008. The trial court lost its plenary power on February 6, 2008. Guevara had still not been served, and he had not appeared. The real parties do not point to any evidence, pleading, or action that occurred before the summary judgment was signed or even before the trial court lost its plenary power, indicating they intended to press their claims against Guevara. The Order setting aside the summary judgment in this case was signed almost one year after the summary judgment was granted, and more than eight months after the trial court lost its plenary power. I conclude the Order is void. I would grant mandamus relief.